UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     Plaintiff,

v.                                                                    Case No. 6:22-cv-205-WWB-EJK

REAL PROPERTY LOCATED AT
3124 CHEROKEE ROAD, ST. CLOUD,
FLORIDA 34772, AND

REAL PROPERTY LOCATED AT
2132 MAJESTIC WOODS BLVD.,
APOPKA, FLORIDA 32712

     Defendants.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States of America brings this complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.    This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and Rule G(2), the real properties, attachments thereto, and appurtenances thereon, located at:

    a.    3124 Cherokee Road, Saint Cloud, Florida 34772 titled in the name of Harris Faith Investments, LLC; and

    b.    2132 Majestic Woods Blvd, Apopka, Florida 32712 titled in the name of Levelle Harris.

(collectively, "the Defendant Properties") because they were purchased with proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343, and involved in money laundering transactions, in violation of 18 U.S.C. § 1957. The Defendant Properties are thus properties constituting or derived from proceeds traceable to a violation of an offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of Title 18), and property involved in money laundering offenses, and subject to civil forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345 and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.     Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395 because the Defendant Properties are in the district.  28 U.S.C. § 1395(b).

4.     This Court has *in rem* jurisdiction over the Defendant Properties pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts giving rise to the forfeiture of the Defendant Properties occurred in this district, and pursuant to 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

5.     Pursuant to Rule G(3)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and 18 U.S.C. § 985(c)(2), a notice of

2

this forfeiture, as well as a copy of the complaint will be posted on the Defendant

Properties and served on the owners of the real properties.  Thereafter, neither the

issuance of a warrant *in rem* nor any other action will be necessary for the Court to

exercise *in rem* jurisdiction over the property.  18 U.S.C. § 985(c)(3).

## THE DEFENDANTS *IN REM*

6.     The Defendant Properties are the real properties, attachments thereto,

and appurtenances thereon, located at: 1) 3124 Cherokee Road, Saint Cloud, Florida

34772; and 2) 2132 Majestic Woods Blvd, Apopka, Florida 32712.

> 3124 Cherokee Road, Saint Cloud, Florida 34772, more particularly
> described as:
>
> The South half of Lot 9, Block 27, Kissimmee Park, according to
> the map or plat thereof, as recorded in Plat Book 1, Page 41, of the
> Public Records of Osceola County, Florida
>
> Subject to easements, restrictions, reservations and limitations of
> record, if any;
>
> and
>
> 2132 Majestic Woods Blvd., Apopka, Florida 32712, more particularly
> described as:
>
> Lot 15, MAJESTIC OAKS, according to the Plat thereof as recorded in
> Plat Book 16, Page(s) 36 and 37, of the Public Records of Orange
> County, Florida
>
> Subject to easements, restrictions, reservations and limitations of
> Record, if any.

## BASIS FOR FORFEITURE

7.     Pursuant to 18 U.S.C. § 1343, it is unlawful to "devise[] . . . any scheme

or artifice to defraud," or to "obtain[] money or property . . . by means of false or

3

fraudulent pretenses, representations, or promises," if the person "transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce any writings . . . or sounds . . . for the purpose of executing such scheme or artifice." *Id.*

8.      Pursuant to 18 U.S.C. § 1957(a), it is unlawful to knowingly engage or attempt to engage in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by, through, or to a financial institution. *Id.*

9.      The Defendant Properties were purchased with proceeds of wire fraud offenses in violation of 18 U.S.C. § 1343, as set forth further below.  Because the Defendant Properties were purchased with proceeds of violations of 18 U.S.C. § 1343, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes the United States to civilly forfeit any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7).  "Specified unlawful activity," is defined in 18 U.S.C. § 1956(c)(7) to include offenses listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

10.     Additionally, the monetary transactions made to purchase the Defendant Properties were conducted in violation of 18 U.S.C. § 1957(a) because they were knowingly conducted with more than $10,000 in funds derived from specified unlawful activity (specifically, wire fraud offenses), and, as such, the

Defendant Properties are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

11.     As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Properties were purchased with proceeds of wire fraud offenses and involved in money laundering transactions.

## FACTS

12.     Specific details of the facts and circumstances supporting the forfeiture of the Defendant Properties have been provided by Federal Bureau of Investigation (FBI) Special Agent (SA) Michael Jeffcoat, who states as follows:

## I.     Overview of the Cares Act

13.     Under the provisions of The Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act, approximately $2.2 trillion dollars in economic stimulus was authorized in March 2020 in response to the economic decline caused by the COVID-19 pandemic in the United States.  The CARES Act is a federal law designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

14.     One source of relief provided by the CARES Act was the authorization of up to $349 billion in Small Business Administration (SBA)-guaranteed forgivable

loans to small businesses through the Paycheck Protection Program (PPP). In April 2020, Congress authorized over $300 billion in additional PPP funding.

15.     In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses, and individuals had to report and document their income and expenses from a sole proprietorship, as typically reported to the Internal Revenue Service (IRS) on Form 1040, Schedule C, for a given tax year.

16.     The CARES Act required PPP loan applications to be processed by a participating lender.  If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted electronically by the lender to the SBA in the course of processing the loan.

17.    According to the SBA, PPP funds were intended to be used to help fund payroll costs, including benefits, and could also be used to pay for mortgage interest, rent, utilities, worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain supplier costs and expenses for operations.  The loans were eligible for forgiveness if they were spent on eligible expenses, including at least 60 percent used toward payroll costs.

18.    All PPP loan applications submitted through August 8, 2020 ("PPP Round One"), were received through the SBA's E-Tran server, which is located in Sterling, VA.  Loan #1 (discussed below) was submitted during PPP Round One.

19.    Applications for "PPP Round Two," defined as applications received after January 11, 2021, were received through cloud-based platform via a server located in Northern California.  Of the loan applications submitted by the perpetrators, 11 of the 12 were submitted during Round Two.

20.    As will be discussed more fully below, the majority of the loan applications submitted by the perpetrators were submitted electronically from an IP address located in Kissimmee, FL.

**II.    Overview of the Fraud**

21.    As will be explained more fully below, between May 2020 and April 2021, Lavelle Harris and his wife, Rachelle Harris, fraudulently applied for at least 12 PPP loans, and obtained over $1.2 million as a result of the fraudulent loan applications.  The loan applications were submitted by Harris or his wife on behalf of six similarly named businesses to at least seven lenders.  Though loans were applied

for under multiple business names, there appears to be little distinction between the businesses, as the business names appear similar, and the loan applications reported a similar number of employees, income, and payroll. Moreover, some of the applications listed the exact same employees despite the applications being for different businesses. Harris and his wife then used the fraudulently obtained loan proceeds on purchases unrelated to the operation of their businesses, including the purchase of the Defendant Properties.

## III.    Start of the Investigation

### A.    Initial Complaint about Levelle Harris by Lender #1

22.    In August 2020, a lender (Lender #1) reported to the FBI that Levelle Harris (Harris) had attempted to apply for multiple PPP loans that were denied. Importantly, each time a loan request was denied, Harris would then submit a new application using different identifiers in an attempt to obtain approval for a PPP loan.

23.    Specifically, Harris was initially denied a PPP loan due to a report showing that he had defaulted on a student loan. When confronted by Lender #1 with this information, Harris claimed that the social security number listed in the report was not his, and provided the lender with a different Social Security Number. However, further investigation showed that the initial SSN provided by Harris was the same SSN associated with Harris' Florida driver's license.

24.    Harris subsequently submitted at least four more applications for PPP loans to Lender #1. For each of the subsequent loan applications, Harris applied

8

using differing identifiers (SSNs, Employer Identification Numbers (EIN) for his companies, and different W-2 information) to try to obtain the loans.

25.     As a result of the information obtained from Lender #1, the FBI started an investigation into Harris' loan applications.  In his loan applications to Lender #1, Harris used at least three different business addresses – an address on Mossy Oak Lane in Clermont, FL and two different addresses on Cypress Landing Avenue in Clermont, FL.

26.     The Mossy Oak Lane address is a single-family home located in a residential community.  A review of the Lake County property records shows that neither Harris nor his wife (or any of their businesses) have ever owned the Mossy Oak Lane property.  However, Harris used this address on his Florida driver's license from July 28, 2017, through December 13, 2019.

27.     In October 2020, FBI agents were able to make contact with a female that resided at the address on Cypress Landing Avenue listed on some of the loan applications. The female told agents that she and her husband have lived at that residence for two years, and she did not know Harris.  The female was also shown a picture of Harris and she indicated that she did not recognize him.

28.     The second Cypress Landing Avenue address listed by Harris on his PPP loan applications does not appear to exist.

29.     In May 2021, the FBI received a subsequent complaint from Lender #1. According to Lender #1, Harris had been approved for at least six PPP loans totaling over $450,000 with multiple other lenders.  Out of the six PPP loan applications that

9

had been submitted at that time, three showed the first Cypress Landing Avenue address as Harris' business address for 2019 and 2020. As discussed above, Harris had no access to the residence during that time frame.

### B.    The Businesses Used by Harris and his wife to Obtain PPP Loans

30.    As will be discussed below, between May 2020 and April 2021, Harris and his wife applied for at least 12 PPP Loans on behalf of the following businesses: 1) Harris Faith Investments, LLC; 2) HFI Harris Faith Investment; 3) Levelle Harris Faith Investments; 4) Rachel Harris Faith Investments; 5) Levelle Harris; and 6) Rachel Harris. Of those businesses, only Harris Faith Investments, LLC is an incorporated business.

31.    According to the Florida Division of Corporations' (FDC) website, www.sunbiz.org, Harris Faith Investments, LLC was incorporated with the state of Florida on April 20, 2020. Harris is the sole authorized member of the business. Its principal and mailing address is listed at a location on Solana Circle in Davenport, FL. No EIN is listed on the FDC's website.

32.    A search of the Internet for "Harris Faith Investments" revealed a website, harrisfaithinvestments.com. The website had a copyright date of 2020, indicating the site was launched in 2020. The "about us" page on the website states:

> Harris Faith Investments is your reliable, trusted source for the working capital you need to sustain, grow, enrich and enhance your business.
>
> We're 100% focused on small business. We launched in 2011 to solve a major issue facing small businesses: financing.

We combined our passion for Main Street with cutting-edge technology to evaluate businesses based on their actual performance, not personal credit. That enables us to say "yes" more often and faster than traditional lenders, which lets owners spend their time where it should be, on growing their business, not seeking financing.

We have helped thousands of business owners receive the financing they need to take their business to the next level. Contact us today to apply for free by either filling out the form or calling (407) 801-4030.[1]

33.     On November 10, 2021, surveillance was conducted at the address listed on the FDC's website for the business and mailing address for the Harris Faith Investments, LLC on Solana Circle.[2] This address is a single-family home in a gated community. The property is not owned by either Harris or his wife, and has been owned by the same family since July 2017.[3] Three cars were parked either in the driveway, or on the road in front of the home, none of which were registered to Harris or his wife. There was not a business sign or any other indication of an office space suitable for the operation of a business with multiple employees.

**C.     The Fraudulent Loans**

34.     Below is a chart depicting the 12 fraudulent PPP loans obtained through applications submitted electronically by Harris or his wife:[4]

---

[1] This phone number was used on a one of the fraudulent PPP loan applications submitted on behalf of Rachel Harris Faith Investments to Blue Ridge Bank.

[2] The residence located on Solana Circle was identified as the business address on loan applications submitted by the following businesses: Harris Faith Investments, HFI Harris Faith Investments, Rachel Harris Investments, and Rachel Harris.

[3] However, Harris' wife has used this address on her Florida driver's license since February 2019.

[4] All loan applications for a business with the name "Rachel Harris" in them were

| Lender | Application Date | Loan Number | Borrower | Loan Received | Employees Claimed | Monthly Payroll |
|---|---|---|---|---|---|---|
| Itria Ventures | 05/26/2020 | 1376607806 (Loan #1) | Harris Faith Investments | **$60,000.00** (05/27/2020)[5] | 10 | $24,000 |
| Itria Ventures | 02/06/2021 | 2191058409 (Loan #2) | HFI Harris Faith Investments | **$125,000.00** (02/12/2021) | 10 | $50,000 |
| Blue Ridge Bank | 02/13/2021 | 9639158405 (Loan #3) | Levelle Harris Faith Investments | **$119,900.00** (02/24/2021) | 10 | $48,000 |
| Hope Enterprise | 02/15/2021 | 7925628907 (Loan #4) | Levelle Harris Faith Investments | **$120,832.32** (05/14/2021) | 10 | $48,000 |
| Blue Ridge Bank | 02/19/2021 | 3030878510 (Loan #5) | Rachel Harris Investments | **$120,732.50** (02/25/2021) | 10 | $48,333 |
| Newtek | 02/26/2021 | 9373418402 (Loan #6) | Rachel Harris | **$120,000.00** (03/16/2021) | 10 | $48,000 |
| A10 | 03/10/2021 | 2904308609 (Loan #7) | Levelle Harris Faith Investments | **$141,600.00** (03/23/2021) | 10 | $48,333 |
| Newtek | 03/22/2021 | 250458905 (Loan #8) | Levelle Harris | **$100,800.00** (06/02/2021) | 10 | $56,666 |
| American Lending Center | 03/28/2021 | 3079018707 (Loan #9) | Levelle Harris Faith Investments | **$120,833.33** (04/13/2021) | 10 | $48,333 |
| American Lending Center | 04/10/2021 | 2427388705 (Loan #10) | Rachel Harris Investments | **$20,833.33** (04/13/2021) | 1 | n/a[6] |
| Benworth Capital | 04/13/2021 | 4085988804 (Loan #11) | Levelle Harris | **$20,833.33** (04/13/2021) | 1 | n/a[7] |

electronically signed by Rachel Harris. All other loan applications were electronically signed for by Harris.

[5] The proceeds obtained from this loan were deposited into Armed Forces Bank Account #XXXXXX3583 in the name of Levelle Harris. All other loan proceeds were deposited into Harris' PNC Bank account.

[6] The loan application listed a gross income for 2019 for this business as $100,000. A monthly payroll was not listed because for sole proprietorships, as was the case here, the PPP regulations limited compensation to an annualized salary of $100,000, and $20,833 was the maximum possible PPP loan.

[7] The loan application listed $680,000 as the gross income for the business for 2020.

| Lender | Application Date | Loan Number | Borrower | Loan Received | Employees Claimed | Monthly Payroll |
|---|---|---|---|---|---|---|
| | | | | (04/23/2021) | | |
| A10 | 04/19/2021 | 4252928806 (Loan #12) | Levelle Harris Faith Investments | **$141,665.00** (04/22/2021) | 2nd draw on Loan #7 | n/a[8] |

### D.    Fraudulent Nature of the Loans

35.    For the above-referenced loans, at least nine (Loan #s 3 and 5 through 12) were submitted electronically from an IP address in Kissimmee, FL.[9]  The IP address is tied to a residence in Kissimmee that the FBI believes Harris was renting. This residence is about ten minutes away from the residence located on Solana Circle in Davenport, FL that was listed on five of the loan applications.  *See* ¶33.

36.    The residence located on the first Cypress Landing Avenue property in Clermont, FL was identified as the business address on the four loan applications submitted by Levelle Harris Faith Investments and Levelle Harris.  Interestingly, for Loan #4 submitted to Hope Enterprise on behalf of Levelle Harris Faith Investments, the Mossy Oak Lane property in Clermont, FL was identified as its business address.  However, just three days prior to submitting that loan application, in its loan application to Blue Ridge Bank (Loan #3), Harris listed the business address for Levelle Harris Faith Investments as the residence on Cypress Landing.

---

[8] According to the SBA, a borrower was generally eligible for a second draw PPP loan if the borrower: 1) previously received a first draw PPP loan, and will or did, use the full amount for authorized uses; 2) has no more than 300 employees; and 3) could demonstrate a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

[9] The FBI is still investigating from where the other loan applications were submitted.

37.     As discussed above, all of those locations used for Harris and his wife's businesses are single-family homes that do not appear to be a suitable work space for a business claiming ten employees.

38.     Additionally, at least eight EINs were used on the various applications submitted by Harris and his wife for a total of six businesses.  The Florida Department of Revenue revealed no records on file for any of the EIN numbers used on the subject loans.

39.     Moreover, on the loan application to Itria Ventures for Harris Faith Investments, LLC, (Loan #1) Harris provided what appeared to be an intentionally altered letter from the IRS assigning his business EIN number.  In the text of the letter from the IRS, it states, "we assigned you EIN 85-1094702."  However, on the top right corner of the letter, the EIN is listed as 85-0711708, and appears to be in a different font (along with the date at the top of the letter) than the rest of the letter.

40.     Harris also altered Harris Faith Investments, LLC's Articles of Incorporation that he provided in support of Loan #1.  The Articles of Organization provided to Itria Ventures says that the Articles of Organization were filed with the Florida Secretary of State on April 20, 2019, and the application stated the business was established on January 1, 2019.[10]  However, the Articles of Organization were not filed with the Florida Secretary of State until April 20, 2020.

---

[10] In order to meet the requirements for the PPP loan, a business had to be in operation no later than February 15, 2020.

14

41.     In the loan applications submitted to American Lending Center (on behalf of Levelle Harris Faith Investments), A10 Capitol (on behalf of Levelle Harris Faith Investments), and Newtek (on behalf of Rachel Harris and Levelle Harris), the applications included W-2 payroll forms for nine employees.[11] The W-2 forms for each business' loan application indicated that all of the employees each made $48,000 a year.  Additionally, each loan application listed the same nine employees despite being submitted on behalf of three different businesses.

42.     In addition, PPP loan applications were submitted on behalf of Rachel Harris Investments to two different lenders (Loan #5 and Loan #10).  For Loan #5 (submitted on February 19, 2021), the loan application indicated that Rachel Harris Investments had ten employees.  For Loan #10 (submitted on April 10, 2021), the loan application indicated that there was only one employee.  Both applications used the same EINs and provided the same IRS form 940, listing $480,000 as the total payments to all employees.

43.     Similarly, PPP Loan applications also were submitted on behalf of Levelle Harris (Loan #8 and Loan #11) to two different lenders.  For Loan #8 (submitted on March 22, 2021), the loan application indicated that Levelle Harris had ten employees.  For Loan #11 (submitted on April 13, 2021), the loan application indicated that there was only one employee. In this case, the applications

---

[11] These payroll forms were used to prove that the companies had the employees that were listed on the loan applications.  W-2s were not provided for either Harris or his wife (as the tenth employee of the businesses).

each had a different EIN; however, both applications listed the businesses gross receipts as $680,000 and total profits of $100,000, and both applications included the same IRS for Schedule C (Profit or Loss from Business).

44.    Four loan applications also were submitted on behalf of Levelle Harris Faith Investments to four different lenders.  Two applications were submitted in February 2021 (Loan #s 3 & 4) and two in March 2021 (Loan #s 7 and 9).  However, PPP loan rules only allowed for one loan per business (and potentially a second draw if certain criteria were met, but none of these specific loans were second draws).[12]

45.    Seven of the nine social security numbers listed on the W-2 forms submitted with the loan applications either did not match the records found or they were not found at all.  Similarly, seven of the nine addresses listed for the employees did not match the address information listed on their Florida driver's licenses.

46.    In every loan application submitted by Harris or his wife, the business applying for the loan was represented to have been in existence since 2019.  However, the two accounts used to receive PPP loan proceeds – Harris' Armed Forces Bank account and Harris' PNC Bank account – were not opened until March and June 2020, respectively.

47.    In addition, the account activity for these two accounts are inconsistent with the operation of a business.  Indeed, there were no payroll payments to

---

[12]  Harris did do a second draw in relation to Loan #7 in April 2021 (Loan #12).

employees.  There were Cash App payments to third-parties.  Even if those payments were payroll, they totaled less than $7,000 – well below the SBA's requirements that 60% of loan proceeds be used for salary.  Instead, the majority of the loan proceeds were used to purchase cars and the real property subject to forfeiture in this case, which were not permissible expenditures under the SBA's regulations.

48.    Lastly, all of the funds from the loans, except for one, were deposited into the same bank account, not multiple business accounts as one would expect from separate, legitimate businesses.

**E.    Purchase of the Defendant Properties with Wire Fraud Proceeds**

49.    Harris' PNC Bank account was opened on or about June 12, 2020 (less than one month after Harris Faith Investments, LLC's Articles of Incorporation were filed with the Florida Secretary of State) with a $100 cash deposit.  Harris and his wife are the sole signors on the account.

50.    As of February 11, 2021, the day before the fraudulently obtained loan proceeds started being deposited into the account, the balance in the account was $31,454.98.[13]  Thereafter, between February 12, 2021 and June 2, 2021, $1,153,029.48 was deposited into the account from the 11 fraudulently obtained PPP loans described in the above-referenced table.[14]

---

[13] From August 12, 2020 through February 12, 2020, approximately $97,914 was deposited into the account.  The vast majority of deposits came from payments from Amazon labeled as "Corporate ACH Amazon Pay" ($69,000) and rent payments ($24,000).  At this time, the FBI does not know the basis for the payments from Amazon.

[14] Loan #1 was deposited into Harris' Armed Forces Bank account.

51.     In addition to the $1,153,029.48 from the fraudulently obtained loans, another $321,021 was deposited into the account from the sale of a piece of property Harris purchased with fraudulently obtained PPP loan proceeds and from real estate commissions he received from selling properties purchased with fraudulently obtained PPP loan proceeds.  Moreover, $60,000 was deposited into the account from a PPP loan Harris obtained from PNC Bank.[15]  Lastly, $78,260 was deposited into the account from EBF Holdings dba Everest Business Funding.[16]

52.     Between February 12, 2021 through August 2, 2021 (when the last property sought for forfeiture was purchased), there was a total of approximately $44,163 in "clean" funds deposited into the account:

    a.     $14,414 from the United States Treasury (at least $2,800 from stimulus funds);

---

[15] The FBI is awaiting the records to confirm that this loan was also fraudulently obtained.

[16] Harris Faith Investments entered into a "Revenue Based Financing Agreement" with EBF on June 22, 2021.  (This appears to be a method of raising capital for a business from investors who receive a percentage of the business's ongoing revenues in exchange for money they invest.)  The application indicated that Harris Faith Investments had $258,655.47 in monthly sales and $3,103,865.60 in yearly sales.  However, on the IRS forms Harris provided in support of Harris Faith Investments' PPP loans, yearly gross sales or receipts were reported as $580,000.  Given the discrepancy between the numbers, and the utter lack of evidence that the business generated any income, this information appears fraudulent.  In reliance on the figures provided by Harris, EBF purchased $120,000 in future sales for $80,000.  After fees, EBF provided Harris with the $78,260 through a direct ACH payment.  The financing application was completed online though a company named Torro, website gotorro.com.  The application was received and e-signed by Torro from an IP address from a server in California.  Harris applied online using an IP address from Kissimmee, FL.  Torro acts as a broker and connects the applicant to an investor, in this case EBF, who supplied the funds and financing agreement.  Consequently, these funds constitute wire fraud proceeds.  Ironically, Harris was paying EBF per the terms of their contract with fraudulently obtained PPP loan proceeds and not revenue generated from the operation of the business.

    b.    $11,200 from three individuals;

    c.    $11,737 form Dan Newlin Injury Attorneys;

    d.    $4,327 from Fair Financial Corp; and

    e.    $2,485 from Cash App.

53.    During the same time, there was also a total of a total of approximately $44,000 transferred into this account from Harris' savings account at PNC, which was funded entirely with transfers from this account.  In other words, Harris funded his savings account from his PNC checking account and then moved the money back to the checking account.

54.    Between early March 2021 and early August 2021, Harris used funds from his PNC checking account to purchase a $40,000 car and four pieces of real property with a total cost of over $1.2 million.[17]

55.    The overwhelming majority of the deposits came from fraudulently obtained PPP loans.  There does not appear to be any deposits from gainful employment or business revenue.  Indeed, Florida Wage and Earnings records for Harris show that in 2019, he had wages from a real estate company totaling $16,078.30.  In 2020 and 2021, Harris' wages totaled $763.75.  Harris' wife did not have any wages since 2018.

---

[17] One of those properties was later sold and, as will be explained below, the proceeds were used to purchase the 2132 Majestic Woods Blvd. property.  A mortgage was later taken out on another one of those properties, so there is not enough equity to move forward with its forfeiture.

       *1.*     *Purchase of 3124 Cherokee Road with Fraud Proceeds Deposited into Harris' PNC Bank Account*

56.     On May 14, 2021, Harris' PNC Bank account received $120,832.32 in fraud proceeds from Loan #4.  Thereafter, on June 2, 2021, the account received $100,800 in fraud proceeds from Loan #8.  Then, on June 23, 2021, $78,260.00 was wired into the account from EBF Holdings.  The balance in the account before the May 14, 2021 wire was $183,493.70.

57.     Between May 14, 2021 and July 7, 2021, when the last payment was made to purchase the 3124 Cherokee Road property, a total of approximately $15,737 in "clean" funds were deposited into Harris' PNC Bank account as follows:

       a.     May 18, 2021: $11,737 from Dan Newlin Attorneys;

       b.     May 18, 2021: $2,800 economic impact check payment to Harris from the U.S. Treasury; and

       c.     June 3, 2021: $1,200 rent payment.

58.     On or about June 18, 2021, $5,000 was wired from Harris' PNC Bank account to Fidelity National Title of Florida for a deposit for the 3124 Cherokee Road property.

59.     Thereafter, on July 7, 2021, two additional wires in the amounts of $2,000 and $314,828.51 were sent to Fidelity National Title of Florida for the purchase of the 3124 Cherokee Road property.  Property records reveal that on July 16, 2021, the property was purchased by Harris Faith Investments, LLC.

60.     Of the $321,828.51 in funds used from Harris' PNC Bank account to purchase the 3124 Cherokee Road property, at least $299,892.32 was from fraud

proceeds.  Because the property was purchased with at least $299,892.32 in wire

fraud proceeds, the property, up to $299,892.32, is subject to forfeiture pursuant to 18

U.S.C. § 981(a)(1)(C).  Additionally, because the property was purchased (a

monetary transaction by Harris) with more than $10,000 in funds derived from his

wire fraud offenses, the property is subject to civil forfeiture pursuant to 18 U.S.C. §

981(a)(1)(A).

    2. *Purchase of 2132 Majestic Woods Blvd. with Fraud Proceeds Deposited into Harris' PNC Bank Account*

  61. The purchase of the 2132 Majestic Woods Blvd. property was primarily

funded with proceeds from the sale of a piece of property on York Court in

Longwood, FL that Harris (through Harris Faith Investments, LLC) purchased

primarily with fraud proceeds.  The York Court property was also involved in a

money laundering transaction because the monetary transactions made to purchase

the property was knowingly conducted with more than $10,000 in funds derived

from wire fraud offenses.

    a. Purchase of York Court Property with Fraud Proceeds Deposited into Harris' PNC Bank <u>Account</u>

  62. On or about April 14, 2021, $238,788.43 was wired from Harris' PNC

Bank account to Equitable Title of Celebration, LLC as payment for the York Court

property.[18]  The day before, Harris' PNC Bank account received two deposits of

fraudulently obtained loan proceeds: 1) $120,833.33 from Loan #9; and 2)

---

[18] On April 2, 2021, an additional $5,000 was wired transferred to the title company as a deposit for the York Court property.

$20,833.33 from Loan #10.   The balance in the account before these two deposits was $578,047.47.

63.     Additionally, on March 16, 2021, $120,000 from Loan #6 was deposited into Harris' PNC Bank account, and on March 23, 2021, $141,600 from Loan #7 was deposited into the account.

64.     Also, between March 4, 2021 and April 14, 2021, $60,000 from a PPP loan obtained through PNC Bank and $41,000 from Harris' savings account at PNC Bank were also deposited into this account.  As stated above, during this time, Harris' savings account was funded entirely with money from this account.

65.     The only other deposits into Harris' PNC Bank account during the relevant time frame (between March 4, 2021 and April 14, 2021), which, at this time, are being considered "clean" deposits are as follows: 1) $8,400 from Harris' mother; and 2) $11,614 from the U.S. Treasury.

66.     Even assuming all of the "clean" money ($20,014) went into the $243,788.43 cost of the York Court property, at least $223,774.43 of the purchase money for the property came from wire fraud proceeds.  Therefore, the York Court property was purchased with wire fraud proceeds and involved in a money laundering transaction, in violation of 18 U.S.C. § 1957, subjecting it to forfeiture. However, in July 2021, the property was sold for approximately $336,700; those funds are forfeitable because they are traceable to the York Court property.  Harris then used $309,013.18 of the forfeitable sale proceeds to purchase the 2132 Majestic Woods Blvd. property.

b.    Purchase of the 2132 Majestic Woods Blvd. Property with Proceeds from the Sale of the York Court Property

67.    On July 26, 2021, $309,013.18 was wired into Harris' PNC Bank Account from OS National.  The warranty deed from the sale of the York Court property was prepared by OS National, and property records show that the York Court property was sold on July 26, 2021.  Prior to the receipt of this wire transfer, the balance in the account was $69,116.85.

68.    The only other deposit into Harris' PNC Bank Account between July 26, 2021 and August 2, 2021 (when the funds were wired to purchase the 2132 Majestic Woods Blvd. property) was an $11 credit from Home Depot.

69.    On August 2, 2021, $329,018.32 was wired from Harris' PNC Bank account to Celebration Title Group for the purchase of the 2132 Majestic Woods Blvd. property.  The property was purchased by Harris Faith Investments, LLC on August 2, 2021.  Then, on September 9, 2021, ownership of the property was transferred to Levelle Harris via Quitclaim Deed.

70.    Even assuming the only dirty money used to purchase the 2132 Majestic Woods Blvd. property was the $309,013.18 from the sale of the York Court property, the 2132 Majestic Woods Blvd. property, up to $309,013.18, is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).  Additionally, because the 2132 Majestic Woods Blvd. property was purchased (a monetary transaction by Harris) with more than $10,000 in funds derived from his wire fraud offenses, the property is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

71.     As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Properties were purchased with proceeds obtained from wire fraud offenses, in violation of 18 U.S.C. § 1343, and involved in money laundering transactions, in violation of 18 U.S.C. § 1957(a), and are, therefore, subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

Dated: February 1, 2022                    Respectfully Submitted,

ROGER B. HANDBERG
United States Attorney

By:

NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar Number 0820601
400 W. Washington Street,
Suite 3100
Orlando, Florida 32801
(407) 648-7500 – telephone
(407) 648-7643 – facsimile
Email: icole.andrejko@usdoj.gov

## VERIFICATION

I, Michael Jeffcoat, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigation, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the Federal Bureau of Investigation, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 31 day of January, 2022.

MICHAEL JEFFCOAT
Special Agent
Federal Bureau of Investigation

26